UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHIMIZU CORPORATION,           )
                               )
        Plaintiff,             )    CIVIL ACTION NO.
                               )    11-30085-DPW
v.                             )
                               )
DOW ROOFING SYSTEMS, LLC,      )
                               )
        Defendant.             )
                               )

MEMORANDUM AND ORDER
September 27, 2013

This action arises out of a failed contract to provide roofing material.  Plaintiff Shimizu Corporation is a Japanese general contractor.  It alleges that Defendant Dow Roofing Systems[1] sold it defective roofing material for installation on Canon Opto factory buildings in Malaysia, which began to leak within a few years of installation.

Plaintiff also brings claims for contractual breach of the warranty of merchantability, contractual breach of the warranty of fitness for a particular purpose, fraudulent or negligent misrepresentation, fraudulent inducement, negligence, and violation of M.G.L. 93A for unfair or deceptive business practices.

---

[1] Dow is named as Defendant in this case in its capacity as successor in interest to JPS Elastomerics Corp. d/b/a Stevens Roofing Systems.  For consistency and clarity, I will refer to the Defendant as "Dow" throughout this Memorandum.

Dow argues that it made no general warranties, that it has satisfied the limited, material-only warranty that Canon purchased, and that the Massachusetts statute of limitations governing the sale of goods bars Shimizu's contract claims.  The parties have filed cross-motions for summary judgment.  Shimizu seeks partial summary judgment that its General Terms and Conditions control the contract between the parties.  Dow seeks summary judgment on all counts of the Complaint.  While I find Shimizu is entitled to summary judgment that its General Terms and Conditions control the agreement, the undisputed facts establish that Shimizu cannot sustain most of the claims it presses.  Only the breach of the warranty of merchantability claim survives.  I will grant Dow's motion for summary judgment, except with respect to Shimizu's breach of the warranty of merchantability claim.

## I.  BACKGROUND

In 2004, Canon Opto, one of the largest manufacturers of digital cameras and lenses in the world, hired Shimizu to investigate leaks in the roof of a Canon Opto factory in Malaysia.  Shimizu presented a number of options to fix the leaks, including covering the factory's existing metal roof with "resin sheet," such as the thermoplastic polyolefin ("TPO") at issue in this case.  In discussing the resin sheet option, the report that Shimizu presented to Canon stated that "the renewal

2

or update cycle is about 15 to 20 years, no protective coating or painting." However, Hidehiko Yoshimine, who authored the report, has testified that he "did not know about TPO" at the time he wrote the report. As part of Shimizu's presentation of various options, a Dow independent sales representative - Tameshi Yamaki - presented the potential benefits of Dow's TPO roofing material. Ultimately, Canon decided on the resin sheet option and hired Shimizu to design and install the roof. Shimizu hired a subcontractor, Shin Eversendai, to perform the actual installation.

Shimizu alleges, and Dow disputes, that Mr. Yasuhisa Ueda and Mr. Yamaki, both acting on behalf of Dow, represented to Shimizu's Mr. Tanabe that Dow TPO would have "outstanding weatherability" and would last for 15-20 years. Shimizu further alleges that Mr. Tanabe received various Dow catalogs including such representations, but Dow indicates that because Mr. Tanabe did not speak English, Dow representatives partially explained to him what the catalogs stated.

The only express reference to a relevant warranty in the catalogs is an explanation of the various warranty options Dow offers for purchase ranging from "material-only" to "total system" with three potential lengths: 5 years, 10 years, or 15

years.[2]  Dow contends, and Shimizu now disputes, that Canon
itself selected the 10 year, material-only warranty.  Throughout
the negotiations, both Shimizu and Dow regularly discussed this
10 year, material-only warranty, and Dow assured Shimizu that it
would issue the warranty to Canon upon the completion of the
project.  Shimizu does not dispute that Dow ultimately issued a
10 year, material-only warranty to Canon.

## A.   *Dow's Conditions of Sale*

Shimizu and Eversendai negotiated with Dow to purchase TPO
roofing material.  On October 17, 2004, during negotiations, a
Dow sales representative sent an email to Mr. Nakamura, who
worked in overseas procurement for Shimizu.  This email contained
price quotations for Dow TPO roofing material and instructions
for a letter of credit to purchase it.   The email also provided
Dow's standard conditions of sale "for review."  The standard
conditions state,

> [DOW ROOFING] (HEREINAFTER "SELLER") MAKES NO
> WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT
> LIMITATION, WARRANTIES OF FITNESS FOR ANY PARTICULAR
> PURPOSE OR MERCHANTABILITY BEYOND THE WARRANTY THAT THE
> PRODUCTS SOLD HEREUNDER ARE FREE FROM MANUFACTURING
> DEFECTS.  UNDER NO CIRCUMSTANCES SHALL SELLER BE LIABLE
> FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES ARISING
> FROM ANY BREACH OF WARRANTY. SELLER'S SOLE LIABILITY
> AND BUYER'S SOLE AND EXCLUSIVE REMEDY SHALL BE FOR
> SELLER TO SUPPLY REPLACEMENT MATERIAL/ACCESSORIES AND
> SELLER SHALL NOT BE LIABLE FOR THE LABOR OR COSTS

---

[2] One of the brochures also discusses a warranty that TPO roofing
can sustain certain wind speeds, but that issue is not relevant
to this case.

      INVOLVED IN THE REPLACEMENT OF ANY MATERIALS/
      ACCESSORIES.

Dow's conditions also disclaim special or consequential damages and provide that "Buyer's sole remedy against Seller is that Seller, at its discretion will repair, replace or refund the purchase price for any product sold hereunder."  Finally, Dow's conditions state that

> any terms offered by Buyer which are inconsistent with the terms and conditions herein are not binding on the sale of the material/ accessories referred to on the first page hereof.  Unless Buyer receives in writing from Seller, Seller's written consent to a modification of the terms and conditions hereof, the sale by Seller of the material/ accessories shall be conclusively deemed to be governed by all of the terms and conditions herein.

## B.     *Shimizu's General Terms and Conditions*

Three days later, on October 20, 2004, Mr. Nakamura, from Shimizu, sent Ms. Boisvert and Mr. Yamaki, from Dow, Shimizu's standard purchase order, which contained different provisions.

In relevant part, Shimizu's General Terms and Conditions include paragraphs 4 and 6, which state,

> 4. WARRANTY : Seller shall warrant the quality, merchantability and suitability of the goods.  Any claim by Buyer except for latent defects, shall be made in writing, giving description thereof, and be posted within 30 days of the arrival of the goods at the final destination specified on the face hereof, or as soon as practicable thereafter.  Seller shall however be responsible for latent defects of the goods regardless of any failure or delay in giving such notice.

> . . .

> 6. BREACH OF CONTRACT : In the event of breach by
> Seller of any term, condition, and/or warranty of this
> Contract, Buyer may, without prejudice to his right to
> full and just damages, reject the goods . . . .
> Seller's liabilities in the event of such breach shall
> include but not be limited to the loss of the profit
> which Buyer would reasonably have gained from resale of
> the goods, the loss incurred by Buyer due to forfeiture
> of a bond or security, the liabilities of Buyer to any
> person, arising from such breach by Seller, and all
> expenses incurred by Buyer in relation thereto.

Shimizu's General Terms and Conditions also provide that the contract is made on a "principal-to-principal basis between Seller and Buyer," that any disputes must be settled by arbitration in Tokyo, Japan, and that the contract will be governed by the laws of Japan.

## C.   *Negotiations and Issuing the 10-Year Material Warranty*

The next day, October 21, 2004, Mr. Yamaki emailed Ms. Boisvert stating that,

> Mr. Nakamura said he hopes that you can accept their
> general terms and conditions and proceed [with]
> purchasing procedures immediately.  At last meeting, I
> also advised that Shimizu to [sic] accept your
> condition of sales, but Shimizu is not [a] small
> company, it seems not to be easy for them to change
> quickly their rules.

Ms. Boisvert replied, stating "[w]e have carefully reviewed Shimizu's Purchase Order, terms and conditions, shipping instructions and [Letter of Credit] instructions . . . and offer the following comments."  Her comments suggested alterations to the shipping terms and requested that the governing law section be changed to provide that disputes be handled through the

International Dispute Resolution Centre in London.  She did not
request any changes to paragraphs 4 or 6.  She also noted that
"the warranty will be issued upon completion of the project – we
will need to receive a completed Request for Warranty (form is
enclosed)," and under the title "Re Your e-mail earlier today,"
further noted that "we will issue a 10 year material only
warranty."

Mr. Nakamura responded on October 22, 2004 and agreed to
change the governing law provision.[3]  As revised, the General
Terms and Conditions provide for arbitration through the
International Dispute Resolution Centre and also state that
"[t]his contract shall be governed in all respects by laws of
LONDON UK."  The parties continued to negotiate the particulars
of the shipping terms, but there was no further discussion of the

---

[3] Although Shimizu argues that its version of the General Terms
and Conditions are the controlling contractual provisions, as
amended through negotiations, it framed this lawsuit under
Massachusetts law in spite of a choice-of-law provision requiring
arbitration under the laws of the United Kingdom.  Both parties
drafted their summary judgment briefs relying upon Massachusetts
law, and neither argued that the arbitration provision precludes
this suit.  At oral argument on the motion, I raised the issue of
UK law *sua sponte*.  Dow contended that the parties had waived the
choice-of-law provision as well as the arbitration provision.
Shimizu admitted that it had waived the arbitration provision,
but represented that it had neither considered nor researched the
choice-of-law question.  I directed the parties to file
supplementary briefing on the question of the applicability,
enforceability, and potential waiver of UK law.  As will appear
below, I find no waiver and will apply UK law on the basis of
Massachusetts choice-of-law principles.  *See infra* Section
(II)(B)(2).

General Terms and Conditions.  Ultimately, Ms. Boisvert sent an email to Mr. Yamaki, internal to Dow, stating, in relevant part, "[a]fter we received and reviewed [Shimizu's] documents it was noted that Shimizu's Conditions of Sale required the use of Incoterms . . . reflect[ing] the intended 'C&F' transaction . . . .  If Shimizu can agree to the exclusion of Incoterms, we can use the C&F terminology."[4]  Mr. Nakamura agreed to the exclusion of Incoterms.  Incoterms are the standardized terms for commercial contracts that the International Chamber of Commerce publishes.

On November 4, 2004, Shimizu sent Dow a formal purchase order, dated October 20, 2004, reflecting Shimizu's General Terms and Conditions with the governing law changed to that of the United Kingdom, as discussed on October 21 and October 22, 2004. Dow invoiced Shimizu and Shimizu paid with a letter of credit. Shimizu alleges that Dow never objected to Shimizu's General Terms and Conditions as amended in the formal purchase order. Dow's Rule 30(b)(6) witness, Steven Moskowtiz, however, testified that he believed Dow had objected to Shimizu's warranty provisions by means of its own terms and conditions, sent at the outset of negotiations on October 17, 2004 stating, "any terms offered by Buyer which are inconsistent with the terms and

---

[4] "C&F" refers to cost and freight, indicating that the seller pays the costs of getting the product to the destination port.

conditions herein are not binding . . . [u]nless Buyer receives in writing from Seller, Seller's written consent . . . ."

The material-only warranty that ultimately issued between Dow and Canon, discussed in the emails cited above, disclaimed any implied warranties, stating, "THIS WARRANTY AND THE REMEDIES PROVIDED HEREUNDER ARE EXCLUSIVE AND ARE IN LIEU OF ANY OTHER REMEDY OR WARRANTY."  It also disclaimed any incidental or consequential damages.  The remedy provided in this warranty was that "[Dow] will be liable for, but only for, the cost of the material at the time of the claim, prorated for service to date of claim. [Dow] will furnish [Dow] roofing membrane to replace affected area."

## D.  *Leaks in the Canon Factory Roof and Warranty Discussions*

Dow delivered the TPO roofing material around January 15 or 16, 2005.  Shimizu and Eversendai completed installation by the end of June 2005.

Canon contacted Shimizu in April 2010 to complain of leaks in its factory from the Dow TPO roofing.  Shimizu and Eversendai investigated and found that cracks had developed in the TPO material.  Chua Pek Why of Eversendai emailed Steven Moskowitz at Dow to inform him of the cracking in the roof.  The parties disputed the amount of the roof affected by deterioration.  Dow offered to replace the entire TPO roofing material prorated under the terms of the 10-year limited warranty with Canon: 57% of the

10-year warranty term had elapsed.  Thus, Dow offered to cover
43% percent of the required material to recover the roof.
Shimizu believed that it had an obligation to Canon under
Malaysian Law to replace the roof, and did so without accepting
Dow's offer to cover the 43%.  Shimizu hired a new subcontractor
to install a new Sika PVC roof at a cost of approximately $1.6
million.

Shimizu filed this action against Dow in the Massachusetts
Superior Court for Hampden County on December 6, 2010.  It was
removed to the Western Division of this Court and transferred
April 27, 2011 to my docket in the Eastern Division, where all
scheduling and motion practice has been conducted.

## II. SUMMARY JUDGMENT

In their respective cross-motions for summary judgment,
Shimizu seeks partial summary judgment on the issue whether its
General Terms and Conditions control and are binding while Dow
seeks summary judgment to dismiss each of Shimizu's Claims.
Shimizu does not oppose Dow's motion with respect to Count V of
the Complaint (Negligence).  I will therefore grant summary
judgment as to Count V without further discussion, and address
each of the other claims in turn.

### A.  *Standard of Review*

A movant is entitled to summary judgment when "there is no
genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party," and "[a] fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch.* v. *RNK, Inc.,* 632 F.3d 777, 782 (1st Cir. 2011) (citation omitted).

I "view the facts in the light most favorable to the party opposing summary judgment." *Rivera-Colón* v. *Mills,* 635 F.3d 9, 10 (1st Cir. 2011). However, "conclusory allegations, improbable inferences, and unsupported speculation" are insufficient to create a genuine issue of material fact to survive summary judgment. *Sullivan* v. *City of Springfield*, 561 F.3d 7, 14 (1st Cir. 2009) (quotation and citation omitted). In dealing with cross-motions for summary judgment, I "must view each motion, separately, through this prism." *Estate of Hevia* v. *Portrio Corp.,* 602 F.3d 34, 40 (1st Cir. 2010).

**B.  *Discussion***

  1.  Controlling Terms and Conditions

It is clear from the progress of the parties' negotiations that Shimizu's General Terms and Conditions govern the contract. Plaintiff asserts that its General Terms and Conditions, including a choice-of-law provision specifying the law of the UK governs the parties' agreement. Defendant asserts that its

11

Conditions of Sale govern the parties' agreement under Massachusetts law.  As a preliminary matter, I apply Massachusetts law to determine the validity of the competing contracts.  *See N.E. Data Sys.* v. *McDonnell Douglas Comp. Sys.*, 986 F.2d 607, 611 ("Because this claim concerns the validity of the *formation* of the contract . . . the claim falls outside the contract's choice-of-law provision." (emphasis in original)).

Dow sent its Conditions of Sale to Shimizu on October 17, 2004 as part of a price quotation, which, as a long-settled matter of law, does not constitute an offer, but rather an invitation to make an offer.  *See Cannavino & Shea, Inc.* v. *Water Works Supply Corp.*, 280 N.E.2d 147, 149 (Mass. 1972) ("The defendant's letter . . . was not an offer but a quotation of prices, a request or suggestion that an offer be made to the defendant.")  Shimizu made its ultimate offer to Dow in this case, when it sent its purchase order on November 4, 2004, as amended through negotiation by the parties.  Dow accepted the offer and the attached General Terms and Conditions by invoicing Shimizu based on the purchase order and by shipping the TPO material.

Even assuming that Dow's price quotation constituted an offer, Shimizu's General Terms and Conditions would still control.  Dow's General Terms specify that "any terms offered by Buyer which are inconsistent with the terms and conditions herein

are not binding . . . [u]nless Buyer receives . . . Seller's
written consent to a modification . . . ."  However, Dow did
consent to Shimizu's General Terms and Conditions in writing.

On October 21, 2004, Shimizu sent its General Terms and
Conditions to Dow, and asked Dow to agree to this new "draft."
Dow's Mr. Yamaki explained the reason for the change, clarifying
that he had requested that Shimizu agree to Dow's terms instead
of its own, but that "Shimizu is not [a] small company, it seems
not to be easy for them to change quickly their rules," implying
that it might therefore be easier to modify or accept Shimizu's
terms rather than attempt to revise Dow's.  Ms. Boisvert
responded, accepting Shimizu's General Terms and Conditions on
behalf of Dow, stating that "[w]e have carefully reviewed
Shimizu's Purchase Order, *terms and conditions*, shipping
instructions and [Letter of Credit] instructions" and requesting
to change only certain shipping language and the governing law.
(emphasis added).  She again confirmed that Dow had accepted
Shimizu's terms, when she emailed the next day to say, "[a]fter
we received and reviewed [Shimizu's] documents it was noted that
Shimizu's Conditions of Sale required the use of Incoterms . . .
reflect[ing] the intended 'C&F' transaction . . . .  If Shimizu
can agree to the exclusion of Incoterms, we can use the C&F
terminology."  Ms. Boisvert's email confirmed that Dow's only
remaining objection to the Terms and Conditions related to the

13

use of Incoterms.  Once that was resolved, Shimizu sent Dow a
purchase order including the shipping terms as modified, and the
General Terms and Conditions as modified for governing law.  Dow
invoiced Shimizu based on that purchase order and shipped the
roofing material without further objection.  By agreeing in
writing to the terms and conditions with the sole exception of
the governing law clause, it necessarily accepted Shimizu's
warranty and breach of contract clauses which are the foundation
for Shimizu's claims.

Dow argues that even if Shimizu's General Terms and
Conditions would otherwise control, it rejected Shimizu's
warranty and breach of contract clauses by issuing the 10 year,
material-only warranty to Canon.  Dow reasons that because Canon
made the ultimate decisions regarding the roofing material for
its factory, Shimizu acted as Canon's agent and is therefore
bound by the terms of Dow's agreement with Canon that the only
warranty for the TPO material and the only remedy for failure of
the TPO material is covered by the 10 year, material-only
warranty.  However, this misconstrues both the contract between
the parties and the nature of agency law.

Shimizu's terms accepted by Dow expressly state that the
parties enter into their contract on a "principal-to-principal"
basis.  All of Dow's invoices and shipping information also list
Shimizu rather than Canon as the buyer and recipient of the TPO

material, indicating that Dow's general contractual relationship is with Shimizu, not Canon.  In order for Dow to impliedly reject the warranty terms of its contract with Shimizu by entering into a contract with a third party (Canon) such that Shimizu would be bound as an agent of Canon, Dow would have to reject expressly the provision of its contract with Shimizu stating that Shimizu acted as a principal in entering into its contract with Dow.  *See United States* v. *Callahan*, 149 F. App'x 4, 6 (1st Cir. 2005) ("[C]ontracts are not normally binding on third parties.").  It did not.  Dow has presented no evidence that it ever rejected the principal-to-principal clause in Shimizu's General Terms and Conditions or otherwise indicated any belief that Shimizu did not act as its own principal.

Furthermore, even if Shimizu acted as Canon's agent, it would not be bound by the terms of any separate contract between Canon and Dow because an agent is not a party to a contract between the disclosed principal and a third party.  RESTATEMENT (THIRD) OF AGENCY § 6.01 ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal . . . the agent is not a party to the contract unless the agent and third party agree otherwise.").  Dow argues that it rejected the warranty terms that Shimizu proposed by entering into a separate warranty contract with Canon.  Although this may limit *Canon* to the remedies in the 10 year material-only

warranty, it does not similarly limit *Shimizu*'s remedies under its own, separate contract with Dow.

Thus, I find that Shimizu's General Terms and Conditions, as modified through the parties' negotiations, control the contract. These terms include a warranty provision stating, "Seller shall warrant the quality, merchantability and suitability of the goods," and a breach of contract provision stating, "Seller's liabilities in the event of . . . breach shall include but not be limited to the loss of the profit . . . , the liabilities of Buyer to any person, arising from such breach by Seller, and all expenses incurred by Buyer in relation thereto."

## 2. Choice of Law

The parties initially briefed summary judgment based exclusively on Massachusetts law despite the presence of a clause in Shimizu's General Terms and Conditions mandating that the parties resolve any contractual disputes though the International Dispute Resolution Centre in London under the laws of the United Kingdom.  However, after I raised the question of foreign law at the motion hearing, the parties briefed the applicability, enforceability, and potential waiver of UK law at my suggestion.

A federal court sitting in diversity applies the choice-of-law rules of the forum state.  *See Klaxon* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  The parties agree that the choice-of-law clause does not govern Shimizu's tort and 93A

claims because Massachusetts choice-of-law rules dictate that a contractual choice-of-law clause only governs tort claims when breach of the contract is an essential element of the alleged tort, which is not the case in this action.  *See NPS LLC* v. *Ambac Assurance Corp.*, 706 F. Supp. 2d 162, 168-69 (D. Mass. 2010).  I will therefore apply Massachusetts law to the tort claims[5] and the 93A claim.

The parties also agree that they have waived the arbitration provision of the contract.  At oral argument on the motion, in response to the question "[T]he plaintiff's view is that they have waived arbitration[?]," Plaintiff's counsel responded, "Yes, your Honor, that's correct."  Similarly, in response to the question "If I find [Shimizu's General Terms and Conditions] applicable, you've waived them, against arbitration?  Yes or no," Defendant's counsel responded "I believe the answer is a clear 'yes.'"  I therefore find that the parties have waived arbitration and may look to this court directly for resolution of their dispute.

However, the parties dispute whether the choice-of-law clause applies to Shimizu's breach of contract claims, and more specifically, whether it applies to the UK statute of limitations.  This is a question of potentially great

---

[5] I note, however, that Shimizu has not opposed Dow's motion for summary judgment as it relates to one tort claim, Count V (Negligence).

significance to the case.  Shimizu filed this case nearly six
years after its claim accrued - the date Dow delivered the roof.
Absent tolling - which the parties dispute - the four year
Massachusetts statute of limitations for sale-of-goods contracts
would bar Shimizu's claim.  *See* M.G.L. 106 § 2-725(1).  By
contrast, its claim is timely under th esix-year UK statute of
limitaitons.  *See infra* Section II(B)(3).

   *a. Applicability and Enforceability*

   The choice-of-law clause here is enforceable under
Massachusetts choice-of-law rules.  Massachusetts has adopted the
enforceability rule from the Restatement (Second) of Conflict of
Laws, and will "uphold the parties' choice as long as the result
is not contrary to public policy and as long as the designated
State has some substantial relation to the contract." *Steranko*
v. *Inforex, Inc.*, 362 N.E.2d 222, 228 (Mass. App. 1977) (citing
RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187)).  The
Restatement further specifies that

> The law of the state chosen by the parties to govern
> their contractual rights and duties will be applied . .
> . unless . . . the chosen state has no substantial
> relationship to the parties or the transaction *and
> there is no other reasonable basis for the parties'
> choice*.

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 187 (emphasis added).
The parties agree - as they must in this case - that the UK has
"no substantial relationship to the parties or the transaction."
Neither party is based in the UK or has its principle place of

business there.  Shimizu is a Japanese company.  Dow is an
American company based in Massachusetts.  Canon Opto is based in
Malaysia and its parent, Canon, is a Japanese Company.  The
parties did not negotiate their contract in the UK, nor did the
goods begin in, arrive in, or move through the UK.  However, the
clause is nevertheless enforceable because the parties have a
"reasonable basis" for the choice of UK law.

The comments to the Restatement provide examples of
reasonable bases to choose foreign law as well as examples of
unreasonable bases.  For instance, Massachusetts need not "apply
a foreign law which has been chosen by the parties in the spirit
of adventure or to provide mental exercise for the judge."  *Id.*
cmt. f.  By contrast, "when contracting in countries whose legal
systems are strange to [the contracting parties] as well as
relatively immature, the parties should be able to choose a law
on the ground that they know it well and that it is sufficiently
developed."  *Id.*  In this case, the parties' choice of UK law
much more closely resembles the Restatement's example of a
reasonable basis for the choice than its example of an
unreasonable basis.  The laws of Japan (as Shimizu's original
General Terms and Conditions specified) were "strange" to Dow,
and Massachusetts law may have been "strange" to Shimizu.
Therefore, the parties chose the neutral, but familiar and well

developed law of the United Kingdom.  Massachusetts choice-of-law rules and the Restatement permit them to do so.

Dow also argues that the choice-of-law clause is unenforceable because applying the UK statute of limitations would violate fundamental Massachusetts public policy.  *See id.* § 187(2)(b) ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless . . . application of the law of the chosen state would be contrary to fundamental public policy of a state which has a materially greater interest [in the case] than the chosen state.")  Dow substantially overreads the "fundamental public policy" doctrine; a statute of limitations is not the kind of fundamental public policy that must trump foreign choice-of-law. The fundamental public policy doctrine does not mean that Massachusetts law controls wherever it is in conflict with the chosen foreign law.  That would fundamentally defeat the purpose of any choice-of-law rule because the exception would swallow the rule.  Rather, as the Restatement states, "[t]he forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state . . . ."  *Id.* § 187 cmt. g.

Massachusetts courts have held that foreign choice-of-law clauses implicating different statutes of limitations do not violate public policy.  *See Newburyport Five Cents Sav. Bank* v.

MacDonald, 718 N.E.2d 404, 407 (Mass. App. Ct. 1999)("The choice
to apply New Hampshire's statute of limitations . . . is not
contrary to Massachusetts public policy, and New Hampshire, as
*the State designated by the parties for choice of law purposes*,
has a more substantial relation to the mortgage notes than
Massachusetts . . . ." (emphasis added)(internal quotation marks
omitted); *see also Formato* v. *Protonex Techs. Corp.*, 2006 WL
4114292, *4 (Mass. Super. Dec. 20, 2006).

Finally, Dow argues that even if the choice-of-law clause is
enforceable, the court should apply the Massachusetts statute of
limitations.  The cases it cites have no application to the
present case.  In each, the court applied the functional approach
- under the Restatement (Second) of Conflicts of Laws § 142 - to
determine the applicable law because the choice of law in the
contracts at issue was not clear.  *See Shamrock Realty Co.* v.
*O'Brien*, 890 N.E.2d 863, 865 (Mass. App. Ct. 2008)("The guarantee
[at issue in this case] did not contain a choice of law
provision."); *In re Fraden*, 317 B.R. 24, 33 (Bankr. D. Mass.
2004)("The Security Agreement fails to specify the law that shall
govern, *inter alia*, its validity or interpretation." (italics in
original)); *New England Tel. & Tel. Co.* v. *Gourdeau Constr. Co.*,
647 N.E.2d 42, 44-45 (Mass. 1995)("[T]he construction contract
provided that '[t]he Contract shall be governed by the law of the
place where the Project is located.'  Gordeau repeats these

points but does not argue that the quoted contract language dictates that New Hampshire's statute of limitations must be used." (alterations in original)).  By contrast, the operative contract in this case - Shimizu's General Terms and Conditions as modified through negotiation - includes an express choice-of-law clause, stating "[t]his contract shall be governed in all respects by laws of LONDON UK."  Thus, the analysis that the courts applied in *Gourdeau*, *In re Fraden*, and *Shamrock Realty* to determine which jurisdiction's substantive law should control in the *absence* of an express choice-of-law clause is not relevant to this case.

The Massachusetts Appeals Court made this distinction clear in *Shamrock Realty*, when it distinguished a previous case on the basis that it included an express choice-of-law clause whereas the context in *Shamrock Realty* did not.  *See Shamrock Realty*, 890 N.E.2d at 868 & n.9.  The court found that "*Newburyport Five Cents Sav. Bank* v. MacDonald, 718 N.E.2d 404, 407 (Mass. App. Ct. 1999) focused on the parties' choice of law" but that such a choice did not control the outcome of the questions in *Shamrock Realty*, in part because "the guarantee agreement did not expressly contain a choice of law provision.  Rather, it contained a clause accepting personal jurisdiction in Rhode Island."  *Id.* at 868 n.9.

*b. Waiver*

Shimizu has not waived the choice-of-law issue.  To be sure, both parties proceeded from the filing of this action through briefing  the motions for summary judgment under the assumption that Massachusetts law would apply.  As Dow contends, this may be sufficient to find waiver in certain cases.  *In re Newport Plaza Assoc., L.P.,* 985 F.2d 640, 644 (1st Cir. 1993)("When opposing parties agree to the source of the substantive law that controls their rights and obligations, and no jurisdictional concerns are present, a court is at liberty to accept such an agreement without independent inquiry."); *In re Fraden*, 317 B.R. at 35 n.25 ("Other jurisdictions have similarly concluded that a party's failure to raise choice-of-law issues in a timely manner . . . results in the waiver of any subsequently-raised choice of law argument.").  However, in this case, the opposing parties do not agree as to the source of the substantive law.  *In re Newport* is therefore inapposite.  Furthermore, while a court *may* find waiver for failure to timely raise choice-of-law issues or when opposing parties agree to the source of the substantive law, courts are not *required* to find such waiver.

When presented with the question of the choice of law at oral argument and asked whether Massachusetts law and UK law may contain relevant differences, Shimizu's counsel stated "we can't take that position knowledgeably because I don't know whether

there's a difference in that body of law . . . [a]nd I would like the opportunity to take a look at it and submit something after the hearing."  Dow's counsel for his part stated that "if the Court finds that the Shimizu general conditions . . . are controlling, then the UK law . . . , as a matter of substance, not procedural law, could be invoked."  Dow also maintained at oral argument that "the statute of limitations is procedural [and so] . . . the statute of limitations that governs . . . would be Massachusetts law."  Dow continues to maintain that only Massachusetts law applies to the statute of limitations, but, given Massachusetts case law, no longer contends that the procedural/substantive distinction is the relevant consideration, presumably because the Massachusetts Supreme Judicial Court has specifically repudiated that test.  *See Gourdeau,* 647 N.E.2d at 46 ("We state for the future that this court's treatment of the application of statutes of limitations as procedural will no longer be continued.").

Although Shimizu could have been more prompt in its recognition of the choice-of-law issue, when queried, it declined to waive the issue and requested time to argue it.  I cannot say that Shimizu knowingly or intentionally waived the application of UK law.

*          *          *

Because I find that the choice-of-law clause in Shimizu's amended General Terms and Conditions is enforceable under Massachusetts choice-of-law rules, that it applies to this case, and that Shimizu has not waived its right to assert UK law, I conclude that UK law governs Shimizu's contract claims and Massachusetts law governs its 93A and tort claims.

### 3.   Statute of Limitations

The parties agree that, under the law of the United Kingdom, which I have determined applies to the breach of contract claims, the relevant statute of limitations is Limitation Act 1980 § 5 for "a simple contract."  Section 5 of the Limitation Act provides that a party may bring a claim for breach contract within six years of the date the claim accrued.  In this case, the parties agree that the claim accrued on the date Dow delivered the goods to Shimizu.

Dow delivered the roofing material to Shimizu on January 15 or 16, 2005 and Shimizu eventually brought this action on December 8, 2010.  Because Shimizu filed this action within six years of the date the claim accrued, Shimizu timely filed its breach of contract claims pursuant to UK law.

### 4.   Warranty

Counts I and II allege breach of contract through breach of warranty.  In Count I, the Complaint alleges breach of the

"warranty of merchantability" in Count II, the Complaint alleges breach of the "warranty of fitness for a particular purpose."

Under Massachusetts choice-of-law rules, breach of warranty claims seeking recovery for economic loss, including loss of profits, are treated as contract-based claims. *Bay State-Spray & Provincetown S.S.* v. *Caterpillar Tractor Co.*, 533 N.E.2d 1350, 1351-55 (Mass. 1989).  This is not a case where the alleged breach of warranty resulted in personal injury such that it might be treated as a tort claim.  *See Greenray Indus., Inc.* v. *Charleswater Prods., Inc.*, No. 88-cv-2566, 1990 WL 26887, *1 (D. Mass. Feb. 23, 1990)(quoting *Cohen* v. *McDonnell Douglas Corp.*, 450 N.E.2d 581, 584 (Mass. 1983)).  Because Shimizu's breach of warranty claims sound in contract, UK law governs.  *Cf. id.* (noting that where the parties have expressed a specific intent as to the governing law in their contract, Massachusetts courts will apply that choice to breach of warranty claims).

Shimizu argues that Dow warranted that its TPO roofing material would have "outstanding weatherability" and a lifespan of 15-20 years through statements in its catalogs and through oral representations to Shimizu representatives. The catalogs that Shimizu claims warranted particular lifespan and outstanding weatherability actually disclaim any such warranties, stating that "[a]ll statements herein are expressions of opinion, which by performance and testing are believed to be accurate and

reliable, but are presented without guarantee or responsibility on our part. . . . No warranty, expressed or implied, other than that described in this brochure, is made or intended."

The parties originally briefed this claim according to the law of Massachusetts which precludes a party from generally disclaiming warranties, stating that a clause in a contract which "generally disclaim[s] 'all warranties, express or implied' cannot reduce the seller's obligation . . ." M.G.L. 106 § 2-313, cmt. 4.  However, under the controlling law of the UK, parties to a non-consumer contract may disclaim any warranty as long as the disclaimer meets a "reasonableness" test.  *See* Unfair Contract Terms Act, 1977, c. 50 § 6(3).  The agreement between Shimizu and Dow is not a consumer contract.  Under UK law, "[i]t was clearly a contract made in the course of business" and therefore not a consumer contract.  *Patrick Christopher Ormsby t/a Bte Auto Repairs* v. *H & H Factors Ltd.*, [1990]1990 WL 10631352 (Court of Appeal (Civil Division))(appeal taken from Evesham County Court).  Thus, the parties may reasonably disclaim warranties.

The UK Unfair Contract Terms Act states that "implied undertakings as to conformity of goods with description or sample," as Shimizu alleges here, "can be excluded or restricted by reference to a contract term, but only in so far as the term satisfies the requirement of reasonableness."  Unfair Contract

Terms Act, 1977, c. 50 § 6(2)-(3).  Section 11 of the Act states

that a disclaimer is enforceable if it is "fair and reasonable

. . . having regard to the circumstances which were, or ought

reasonably to have been, known to or in the contemplation of the

parties when the contract was made."  *Id.* § 11(1).  The Act also

provides a non-exclusive list of factors for courts to consider

in making their determination.  These include:

> (a)  the strength of the bargaining positions of
> the parties relative to each other, taking into account
> (among other things) alternative means by which the
> customer's requirements could have been met;
> (b)  whether the customer received an inducement to
> agree to the term, or in accepting it had an
> opportunity of entering into a similar contract with
> other persons, but without having to accept a similar
> term;
> (c)  whether the customer knew or ought reasonably
> to have known of the existence and extent of the term
> (having regard, among other things, to any custom of
> the trade and any previous course of dealing between
> the parties);
> (d)  where the term excludes or restricts any
> relevant liability if some condition is not complied
> with, whether it was reasonable at the time of the
> contract to expect that compliance with that condition
> would be practicable;
> (e)  whether the goods were manufactured, processed
> or adapted to the special order of the customer.

*Id.,* Schedule 2.

The parties had relatively equal bargaining power under

paragraph (a) because Shimizu could have purchased the roofing

material from other sources and both parties are large

sophisticated corporate players.  *See Messer UK Ltd & Anr.* v.

*Britvic Soft Drinks Ltd.*, [2002]EWCA Civ. 548, 2002 WL 498947
(Court of Appeal (Civil Division)) at ¶ 21.

The customer (Shimizu) negotiated the particular terms of
the agreement, including instituting its own General Terms and
Conditions along with its own warranty provisions and therefore
presumably had the opportunity to propose or include the warranty
language it preferred.  Thus, paragraph (b) also cuts in favor of
reasonableness.

As discussed below, *see infra* Section II(B)(5), the only
Shimizu employee who read the brochures at the time of the
contract testified in his deposition that they did not contain
the warranty statements Shimizu now alleges.  Thus, his awareness
of the disclaimer is immaterial because he was also not aware of
the alleged warranties themselves.  Shimizu's only awareness of
any statement in Dow brochures came from oral representations
that Mr. Yamaki made to Mr. Tanabe in explaining the brochures.
*See infra* Section II(B)(5).  There is scant evidence that Mr.
Tanabe understood the statements alleged to be warranties.  There
is no evidence that he was aware of the disclaimer.  Thus,
paragraph (c) cuts against finding the disclaimer reasonable, but
not strongly as there is little evidence anyone at Shimizu was
aware of the contents of the brochures at all.

The disclaimer is not based on any condition.  Therefore,
paragraph (d) is not applicable.

Finally, the parties have not adduced any evidence whether Dow "manufactured, processed or adapted to the special order of [Shimizu]." *See* Unfair Contract Terms Act, 1977, c. 50 § 11(1)(e).  Thus, paragraph (e) is neutral on the current record.

The five Schedule 2 factors weigh in favor of the reasonableness of the disclaimer.  Moreover, where sophisticated parties - such as those litigating this case - are familiar with the subject matter and operation of such agreements, concern for unreasonable disclaimers is diminished.  *See Granville Oil* v. *Davis Turner*, [2003] 2 CLC 418, 430 ("The 1977 Act obviously plays a very important role in protecting vulnerable consumers from the effects of draconian contract terms.  But I am less enthusiastic about its intrusion into contracts between parties of equal bargaining strength, who would generally be considered capable of being able to make contracts of their choosing and expect to be bound by their terms.").

At the time of the contract, Dow's brochure disclaimers were reasonable because Dow expressly warranted the quality of its goods according to Shimizu's General Terms and Conditions.  Where an agreement provides express warranties, it is commercially reasonable to disclaim other, implied warranties.  *See, e.g.*, *Patrick Chistopher Ormsby,* 1990 WL 10631352 (upholding a warranty disclaimer where the alleged warrantor expressly afforded the customer the benefit of a manufacturers warranty instead); *see*

*also Balmoral Grp. Ltd.* v. *Borealis (UK) Ltd.*, [2006] EWHC 1900, [2006] CLC. 220, ¶¶ 398-404 (Queen's Bench Division (Commercial Court)).  Where, as here, Dow has agreed to the warranties in the General Terms and Conditions, I find that its disclaimer of other warranties in its brochures was reasonable and enforceable.  I will therefore dismiss Shimizu's claim for breach of express warranties of a particular lifespan and "outstanding weatherability."

I turn then to whether Shimizu may have a viable claim on the express contractual warranty in the controlling General Terms and Conditions.  The controlling warranty provision provides, in relevant part, that "Seller shall warrant the quality, merchantability and suitability of the goods. . . . Seller shall . . . be responsible for latent defects of the goods . . . ."[6]

---

[6] Although the express contractual warranty at issue here is framed as one for "quality, merchantability and suitability," the Complaint styles its claim only in the name of merchantability. Any distinctions between the three terms are, however uncertain and have gone unexplained by the parties.  According to the UK Sale of Goods Act of 1979, contents for the sale of goods contain an implied term that the goods are of "satisfactory quality," meaning "they meet the standard that a reasonable person would regard as satisfactory, taking account of any description of the goods, the price (if relevant) and all the other relevant circumstances."  Sale of Goods Act of 1979 § 14(2A).  This Act sets out a similar definition for "merchantable goods" which applies to contracts before 1973 and contracts after 1973 but before the date appointed by the Secretary of State, May 19, 1985.  Schedule 1 (Modification of Act for Certain Contracts) § 14.  The Act contains no definition of suitability, but UK courts appear to treat it much the same as the warranty of quality or  merchantability. *See generally Henry Kendall & Sons* v. *William Lillico & Sons*, [1968] 3 W.L.R. 110 (H.L.).

This provision, however, does not warrant any particular lifespan, nor does it warrant suitability for a particular purpose which might arguably incorporate previous statements by reference.  The only warranties are for quality, merchantability, and the absence of latent defects.  As a procedural matter, breaches of the warranties for merchantability, quality, and suitability for ordinary purpose are normally a fact issues for the jury, *BASF Corp.* v. *Sublime Restorations, Inc.*, 880 F. Supp. 2d 205, 218 (D. Mass. 2012) (citing *Teragram Corp.* v. *Marketwatch.com, Inc.*, 444 F.3d 1, 11 (1st Cir. 2006)).

In this case, although Dow did not make any warranty that "explicitly extends to future performance," and Shimizu's contract claims would therefore be untimely under Massachusetts law, I must deny Dow's motion for summary judgment because the contract warranty claims for merchantability and quality in Count I are timely under the applicable UK law.  *See supra* Section IV(B)(3).  By contrast, there is no express warranty of fitness for a particular purpose and consequently I will grant Dow's summary judgment as to Count II.

### 5.  Misrepresentation

Counts III and IV of the Complaint charge Dow with fraudulent or negligent misrepresentation and fraudulent inducement.  As claims sounding in tort, Massachusetts law

applies.  *See supra* Section II(B)(2).  To support its claim for

negligent misrepresentation, Shimizu must show that Dow,

> (1) in the course of its business, (2) supplied false
> information for the guidance of others (3) in their
> business transactions, (4) causing and resulting in
> pecuniary loss to those others (5) by their justifiable
> reliance upon the information, and (6) that it failed
> to exercise reasonable care or competence in obtaining
> or communicating the information.

*Cummings* v. *HPG Int'l, Inc.*, 244 F.3d 16, 24 (1st Cir. 2001).  In

order to establish fraud in the inducement, Shimizu must prove

the elements of common law deceit: "[1] misrepresentation of a

material fact, [2] made to induce action, and [3] reasonable

reliance on the false statement to the detriment of the person

relying."  *Commerce Bank & Trust Co.* v. *Hayeck*, 709 N.E.2d 1122,

1126 (Mass. App. Ct. 1999).  Dow argues that both claims fail for

the same reasons: (a) the catalogs did not contain any false

statements, and (b) there is no evidence that any person at

Shimizu ever read or relied on Dow's catalogs, even if they did

contain false statements, and that reliance on oral

representations is not commercially reasonable.[7]

---

[7] Dow briefly argues that these claims should be dismissed
because there is no evidence in the record of Dow's knowledge
that any representations were false.  *See Superior Kitchen
Designs, Inc.* v. *Valspar Indus., Inc.*, 263 F. Supp. 2d 140, 149
(D. Mass. 2003) (granting summary judgment where there was no
evidence of knowledge in the record).  However, the issue of
knowledge has been the subject of the parties' discovery motion
practice.  Because discovery on this topic is not fully resolved,
the issue of knowledge remains open and is inappropriate for
determination at this time through these summary judgment
motions.

*a. False Statements*

As discussed above, *see supra* Section IV(B)(4), the brochures do not contain any actionable warranties under UK law. The brochures also contain any warranties or false statements that the TPO roofing material would have "outstanding weatherability" and a lifespan of 15-20 years according to Massachusetts law.

Shimizu argues that statements in Dow's catalogs that its TPO material has "outstanding weatherability" were false, but I find such statements to be inactionable puffery. There is no way easily to verify whether TPO has "outstanding weatherability" and as such, it cannot sustain a misrepresentation claim. *See Marantz Co.* v. *Clarendon Indus. Inc.*, 670 F. Supp. 1068, 1073-74 (D. Mass. 1987) ("Statements which constitute mere 'puffing' rather than affirmations of fact generally relate to the value or quality of that which the seller is offering. These statements tend to be subjective and not easily verifiable."). This kind of statement is a subjective superlative intended to advertize and market the product, but not intended to guarantee a particular measurable or verifiable level of performance. Statements such as "outstanding weatherability" are the heartland of puffery along with other vague affirmations of quality such as "wonderful," "popular," "good," or "flawless." *See Hannon*, 434 N.E.2d at 617 (collecting cases); *Rossman* v. *Herb Chambers Comm.*

*Ave., Inc.*, No. 09-P-954, 2011 WL 5604052, *3 n.3 (Mass. App. Nov. 18, 2011) ("flawless" constitutes puffery).

Shimizu also argues that statements in Dow's brochures and oral representations by Dow representatives to Shimizu representatives that Dow's TPO roofing would have a 15-20 year lifespan were false. However, none of the brochures in the record contain any such representation. One states that "[w]hen compared to a black or dark roof, a white [Dow] roofing membrane can save you thousands of dollars in energy costs over a 10-year period," but this relates primarily to the utility of color choice, and the brochure goes on to clarify that these 10-year cost savings do not include maintenance costs and that such costs may vary from roof to roof based on "labor rates, differences in roof design and other variables." The brochures also describe different warranties available for purchase ranging from a 5 year warranty to a 20 year warranty. However, the availability of different warranty plans does not create a guaranty of performance for a period of time without them. *See Trans-Spec Serv., Inc.* v. *Caterpillar Inc.*, 524 F.3d 315, 323-24 (1st Cir. 2008) ("The warrantor has not guaranteed that the goods will not malfunction in the future, but rather that the warrantor will remedy any problems that arise in a particular way for a limited period of time.").

The only brochure that contains a representation that might be construed as a description - let alone a warranty or guarantee - of the longevity of TPO is the TPO Book of Knowledge, which states that Dow TPO "has also passed 4 million Langleys of EMMAQUA testing.  That's the equivalent of 25 years exposure in Miami, Fla."  However, as discussed more fully below, *see infra* Section IV(B)(5)(b), Shimizu offers no evidence that any representative of Shimizu ever saw, read, received, or discussed this document with anyone.  It cannot alone be the basis of any misrepresentation.  Any misrepresentation, therefore, must have been oral.

Shimizu alleges Dow's Mr. Yamaki gave Shimizu's Mr. Tanabe the catalogs and explained that Dow TPO roofing material would last for 15-20 years.  It also offers evidence to support this point in the form of Mr. Tanabe's deposition testimony.  However, these oral representations cannot and do not survive the written agreement.  "Business people understand that much of what is said during the negotiation of a business agreement never becomes part of the final bargain." *McCartin* v. *Westlake*, 630 N.E.2d 283, 290 (Mass. App. Ct. 1994).  Shimizu and Dow reduced their contract to writing, governed by Shimizu's own General Terms and Conditions including an express warranty provision.  This document supercedes any oral representations Dow may have made. *See Logan Equipment Corp.* v. *Simon Aerials, Inc.*, 736 F. Supp. 1188, 1198

(D. Mass. 1990) ("[A]ny express warranty which may have been formed . . . was necessarily superseded by the specifications negotiated by the parties . . . and expressly set out in both the purchase order and the acknowledgments.").

The controlling warranty provision provides, in relevant part, that "Seller shall warrant the quality, merchantability and suitability of the goods. . . . Seller shall . . . be responsible for latent defects of the goods . . . ."  It does not warrant any particular lifespan, nor does it warrant suitability for a particular purpose which might arguably incorporate previous statements by reference.  The only warranties are for quality, merchantability, and the absence of latent defects.  It does not reference a particular lifespan, and reliance on an oral representation after memorializing the agreement in a written contract would be unreasonable.

Dow also argues that the negligent misrepresentation claim fails for the additional reason that Dow complied with its express warranty, *see Sound Techniques, Inc.* v. *Hoffman*, 737 N.E.2d 920, 927 (Mass. App. 2000), but as discussed above, *see supra* Section II(B)(1), the express 10 year material-only warranty is an agreement between Dow and Canon, not one between Dow and Shimizu, and it therefore cannot extinguish Dow's obligations under its separate contract with Shimizu.

*b. Reliance On Alleged False Statements*

Shimizu's remaining argument is that it reasonably relied on either Dow's oral representations or the TPO Book of Knowledge. Neither can sustain Shimizu's claim because Shimizu cannot show that there was reliance or that, if there were, it could have been reasonable.  Dow argues that Shimizu's claim fails because no Shimizu representative other than Mr. Moo received or read the brochures and that Mr. Moo testified that they did not contain the purported misrepresentations. *Cf. Guckenberger* v. *Boston University,* 974 F. Supp. 106, 150-51 (D. Mass. 1997) ("None of the other plaintiffs have testified that they relied on these brochures' general representations . . . . There being no proof of . . . detrimental reliance, these other plaintiffs have failed to prove a breach of contract . . . arising out of statements that the university may have made in its materials promoting th e disability services program.").  However Shimizu does present evidence that it considered the brochures and Dow's oral representations.  Shimizu's representative, Mr. Tanabe, does not speak English, so rather than reading the brochures himself, he looked to Dow's Mr. Yamaki to explain their contents to him. This, Shimizu argues, is the source of Dow's misrepresentation regarding the 15-20 year lifespan.  However, it was not commercially reasonable for Shimizu to rely on oral representations after reducing the agreement to writing.  "It was unreasonable for the plaintiff to rely on the alleged oral

representations because of the express written word." *Sands* v.
*Ridefilm Corp.*, 212 F.3d 657, 665 (1st Cir. 2000).  Although
nothing in the written agreement directly contradicts the alleged
oral representations regarding the lifespan of Dow's TPO roofing
material, Shimizu as a sophisticated party should have known that
its written agreement superceded any oral representations.  If it
relied on such representations, that reliance was not reasonable
and cannot support a claim for misrepresentation.  Furthermore,
Mr. Tanabe himself testified that Shimizu would not normally rely
on statements by sales representatives.

Shimizu also points to the TPO Book of Knowledge as the
source of its reliance on the representation regarding a
particular lifespan.  The Book of knowledge states that Dow TPO
"has also passed 4 million Langleys of EMMAQUA testing.  That's
the equivalent of 25 years exposure in Miami, Fla."  However,
Shimizu presents no evidence that any representative of Shimizu
ever received, read, or discussed the Book of Knowlege.  Rather,
it argues that Dow representatives themselves got their
information from the Book of Knowledge.  This cannot demonstrate
reasonable reliance by *Shimizu*.  Shimizu also argues that the
court should draw the reasonable inference that Shimizu
representatives may have received the Book of Knowledge, but that
is not a question of inference.  It is a question of fact for
which Shimizu has provided no evidence.  Therefore, I cannot
find, even drawing all reasonable inferences from the evidence

provided, that Shimizu could reasonably have relied on the Book
of Knowledge.

### 6. Unfair and Deceptive Trade Practices (M.G.L. 93A)

Shimizu's 93A claim fails as a matter of law.  M.G.L. 93A §
11 requires that the "unfair or deceptive act or practice
occurred primarily and substantially within the commonwealth."
The Massachusetts Supreme Judicial Court recently clarified that
this inquiry "cannot be reduced to any precise formula." *Kuwaiti
Danish Comp. Co.* v. *Digital Equip. Corp.*, 781 N.E.2d 787, 798
(Mass. 2003).  Rather, a court must consider the entire context
of the claim and determine whether the "center of gravity" of the
acts comprising the claim *primarily* took place in Massachusetts.
*Id.* at 799.  If the contacts of various jurisdictions are
"approximately in balance," the acts did not occur "primarily and
substantially" in Massachusetts, as required by 93A.  *Uncle
Henry's Inc.* v. *Plaut Consulting Co.*, 399 F.3d 33, 45 (1st Cir.
2005).

In this case, the center of gravity of the allegedly unfair
and deceptive acts falls outside Massachusetts.  In *Bushkin
Assoc., Inc.* v. *Raytheon Co.*, the Supreme Judicial Court held
that the alleged unfair or deceptive practices did not occur
"primarily and substantially" in Massachusetts where the
Defendant made allegedly false statements in Massachusetts, but
the plaintiff received and acted on those statements in New York.
*See* 473 N.E.2d 662, 638 (Mass. 1985).  The current case has even

fewer contacts with Massachusetts than *Bushkin*.  In *Bushkin*, the
Defendant unquestionably made its representations from
Massachusetts.  *Id.*  By contrast, in this case, a substantial
amount of the negotiations and representations regarding Dow's
TPO took place at Canon's facility in Malaysia.  The only contact
with Massachusetts is that Dow is based here.  Shimizu received
and relied on Dow's representations outside of Massachusetts, and
the injury occurred outside Massachusetts.  Thus, the "center of
gravity" of the interaction falls outside the Commonwealth.

Although the Supreme Judicial Court decided *Bushkin* long
before *Kuwaiti* changed the articulation of the standard, *Kuwaiti*
did not "suggest that [the Supreme Judicial Court's] prior
decisions regarding how particular fact patterns are to be
interpreted for purposes of Chapter 93A's situs requirement . . .
have been overrated or superceded."  *Uncle Henry's*, 399 F.3d at
45.  In fact, the First Circuit has relied on *Bushkin* regularly,
even after the Supreme Judicial Court's decision in *Kuwaiti*.
*See, e.g.*, *id.*; *Sonoran Scanners*, *Inc*. v. *Perkinelmer, Inc.*, 585
F.3d 535, 546 (1st Cir. 2009).

Shimizu argues that Dow has waived its right to assert that
the allegedly unfair or deceptive practices did not take place
"primarily and substantially" in Massachusetts because it is an
affirmative defense that Dow did not raise in its Answer.
Shimizu cites *Amcel Corp*. v. *Int'l Exec. Sales, Inc.*, for the
proposition that this is an affirmative defense.  170 F.3d 32, 25

(1st Cir. 1999).  There, the First Circuit held that "[u]nder Massachusetts law, the burden is upon the defendant to disprove the 'primarily and substantially' condition, making it effectively an affirmative defense."  *Id.*  However, while it may *effectively* operate like an affirmative defense in terms of the burden, it is not *actually* an affirmative defense.  As the District of Arizona recently explained, in interpreting Massachusetts law, the "primarily and substantially" requirement is not like a traditional affirmative defense because

> it neither admits the allegations of the complaint but suggests some other reason why there is no right of recovery, nor does it concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer.

*W.L. Gore & Assoc., Inc.* v. *GI Dynamics*, 872 F. Supp. 2d 883, 897 (D. Ariz. 2012).  As in *W.L. Gore*, Dow's denials were sufficient to deny liability for the 93A claim, and Shimizu was not prejudiced in developing the issue of the center of gravity of the conduct at issue.  In fact, in *Amcel Corp.*, the First Circuit goes on to say, in the very next sentence, that "we are not concerned with the niceties of pleading."  170 F.3d at 25.  The First Circuit specifically did not find that the defendant waived its right to argue the "primarily and substantially" requirement because it failed to raise it in its answer, but rather because "it was not mentioned in their pretrial brief or their post-trial brief in the district court, and if it was mentioned at any point

during the trial, [the parties] have neglected to tell us where."
*Id.*

Dow appropriately raised this argument in its motion for summary judgment, and did not waive it by failing to mention it specifically in its Answer.  Because I find that the "center of gravity" of the circumstances underlying Shimizu's 93A claim occurred outside Massachusetts, I will dismiss Count VI of the Complaint.

### III.  CONCLUSION

For the foregoing reasons,

I GRANT Plaintiff's Motion for Partial Summary Judgment as to the controlling terms of the contract (Dkt. 68),

I GRANT Defendant's Motion for Summary Judgment (Dkt. 50) with respect to the claim for breach of warranty of fitness for a particular purpose (Count II), the misrepresentation claim (Count III), the fraudulent inducement claim (Count IV), the Negligence Claim (Count V), and the 93A claims (Count VI), but DENY it with respect to the claim for breach of the express warranties of quality, merchantability, and suitability (Count I).

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE